# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HECTOR D. GOMEZ, ) | |
| ) | 11-cv-6108 |
| Plaintiff. ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| FEDERAL EXPRESS, INC. and ) | |
| JOSEF MUFTIC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Hector Gomez works at Federal Express, a shipping and transportation company. In 2011, his direct supervisor issued him several disciplinary citations that ultimately led to his termination. Several months after Gomez's was fired, FedEx reviewed Gomez's termination, reinstated his employment with full back pay, and assigned him, at his request, a new supervisor. After FedEx fired Gomez, but before FedEx initiated its review of that decision, Gomez sued FedEx in federal court, alleging that FedEx violated federal employment-discrimination laws. Gomez alleges that FedEx fired him and delayed review of his termination in retaliation for complaining of racial discrimination.

FedEx moves for summary judgment on all Gomez's claims. Gomez's allegations, construed very liberally, are based on three events: (1) FedEx's delay in reviewing a pre-termination disciplinary citation; (2) Gomez's actual termination; and (3) FedEx's delay in reviewing the termination. The first two events do not provide Gomez a basis for relief because there is no evidence in the record that Gomez complained of racial discrimination prior to the delay. The third event does not provide a basis for relief because federal law does not forbid a

1

brief delay in an employer's investigation into an already-fired employee's complaint. Consequently, the court grants FedEx's motion and enters judgment for FedEx on all claims.

**BACKGROUND**[1]

Gomez began employment with FedEx in April 2000. Perrine Decl. ¶ 8, Dkt. # 101-5. Until 2012, Gomez worked as a courier and was based at a Hillside, Illinois facility. Gomez's personnel file contains a mix of positive and negative feedback for his employment before 2011. For instance, one positive note, from January 11, 2010, reads: "Hector[,] I want to thank you for all your hard work last peak [sic]. I understand that it was not easy due to you being new to our station[,] but you survived. Thank you again." Dkt. # 101-5 at 28–29. And one negative note, from about the same time, reads: "You had 4 pickup failures and because of this the station did not make it[s] pickup reliability goal of 99.75%. This type of performance is not acceptable." *Id.* at 27–28.

---

[1] The court often overlooks minor or unintentional violations of the Rules, but the Rules merit particular discussion in this case. This district's local rules limit briefs to 15 pages. LR 7.1. Additionally, the local rules also require a party opposing summary judgment to file a single "concise response" to the movant's factual statement. LR 56.1. This single statement must contain both a response to the moving party's statement and a "statement, consisting of short numbered paragraphs," of additional facts. The opposing party's factual statement must include "references to the affidavits, parts of the record, and other supporting materials relied upon." An opposing may not "file more than 40 separately-numbered statements of additional facts."
In this case, counsel for plaintiff has shown a total disregard for the above rules. Counsel for both sides are reminded that the Rules exist in recognition that judicial resources are finite and the Court expects compliance with the Rules. Failure to comply, does not advance a party's position.

*1. Gomez's Problems with Muftic*

In January 2011, Josef Muftic became Gomez's direct supervisor, Muftic Decl. ¶ 5, Dkt. # 101-6, and Gomez began to experience repeated disciplinary problems at work. Four of Muftic's reproaches of Gomez form the basis of Gomez's lawsuit.

First, FedEx's personnel notes indicate that on January 21, 2011, FedEx staff observed Gomez going to his personal vehicle after reporting to work. Dkt. # 101-5 at 23–24. Muftic provided Gomez with a notice asking him to comply with security procedures but did not take any formal discipline action against Gomez.

Second, on May 19, Gomez arrived late to work but did not indicate this on his time card. Several days later, Gomez wrote a short note to Muftic, acknowledging that he forgot to mark himself late and stating that he had "had a lot on my mind." Dkt. # 101-3 at 119. Muftic issued Gomez a formal warning letter, which explained that Gomez's behavior violated FedEx's conduct policy.

Third, that same day, Gomez experienced an additional problem that also led to disciplinary action. He stated in his deposition that he was unable to deliver a package because certain streets were closed for the end of the school day. Gomez Dep. 121–22, Dkt. # 101-3 at 59. In FedEx's internal package-tracking notes, Gomez wrote: "Street blocked off by school." Dkt. # 101-3 at 160. He scanned a door-tag but did not leave the tag at the residence, and he also entered what FedEx calls a "dex-08" code. Gomez left a handwritten note to FedEx in which he explained what happened. Dkt. # 101-3 at 159. In the note, Gomez complained that a "very angry and irate manager," not Muftic, "confronted" him over the incident. Gomez described the manager's behavior as "abuse" and "harassment," and Gomez stated that the experience was "frustrating and discouraging."

3

Muftic, as part of his investigation into the incident, asked Gomez to submit responses to several written questions. Dkt. # 101-3 at 161. Muftic asked why Gomez felt that a dex-08 code was the proper response to the situation, and he also inquired about what the other manager had said to Gomez.

Fourth, on May 31, Muftic felt that Gomez's work performance was unsatisfactory. Dkt. # 101-3 at 124. Muftic issued Gomez a formal performance reminder, citing "gross service failures" on Gomez's part. The letter told Gomez: "you missed your finesort time by 23 minutes, you did not have the appropriate amount of P1 stops for the 7:30 sort down or the 8:18 leave building, and you did not contact dispatch or management for assistance." Muftic directed Gomez to take a paid "decision day" to contemplate his future employment at FedEx. Muftic also directed Gomez to return to work with either a resignation letter or a signed agreement stating the ways in which Gomez promised to improve his performance. Gomez returned to work with the performance agreement. Dkt. # 101-3 at 138.

2. *Gomez's Initial GFTP Complaints*

FedEx uses two different internal procedures for employees to file a complaint or to challenge disciplinary action. The first, known as the Guaranteed Fair Treatment Procedure ("GFTP"), covers routine employee complaints. A second procedure, know as EEO[2], specifically covers "an employment discrimination or harassment complaint." Dkt. # 101-3 at 111. The written policy states that both FedEx and federal law protect employees from retaliation for filing a complaint.

---

[2] The record is unclear about what the acronym stands for.

At some point during this time, Gomez filed two GFTP complaints to challenge Muftic's disciplinary actions. In one complaint, Gomez provided a lengthy explanation of why he felt that Muftic's warning letter about the time card was unjustified. Dkt. # 101-3 at 120–23. Gomez stated that he just "made a mistake on a difficult day" and that the experience was "frustrating and demoralising." In his second GFTP complaint, Gomez appealed Muftic's performance reminder. Dkt. # 101-3 at 139–42. Gomez provided another statement with reasons why he felt that Muftic's action was unfair. Gomez did not mention his ethnicity or ethnic discrimination in either GFTP complaint.

On June 3, one day after Muftic issued Gomez the performance reminder, Gomez wrote a letter to his HR advisor to complain about Muftic's treatment of him. Dkt. # 101-3 at 143. Gomez stated that he wished to make a "discrimination and harassment complaint." In a four-paragraph letter, Gomez described how Muftic took unfair disciplinary actions against him. Gomez described Muftic's behavior as "abuse," and he said that Muftic "repeatedly harassed" him by disciplining him for small mistakes. Gomez felt that Muftic had "destroyed [his] career at FedEx" and that Muftic had a "vendetta against [him]." Gomez, again, did not mention or allude to any racially-based harassment.

That same day, the FedEx manager of the Chicago-area district wrote to Gomez to explain that FedEx was delaying Gomez's GFTP appeals in order to investigate Muftic's alleged harassment of Gomez. Dkt. # 101-3 at 145. FedEx's policy at the time was to prioritize harassment complaints by delaying adjudication of disciplinary appeals until FedEx could fully investigate the alleged harassment. Person Dep., Dkt. # 101-4 at 5–6, 10–11. FedEx asked Gomez to complete a packet to provide additional information about Muftic's behavior. The packet instructed Gomez to check corresponding boxes if Gomez experienced discrimination on

5

the basis of "race," "color," or "origin."  Dkt. # 101-3 at 146.  On June 13, Gomez completed the packet, with none of the above checked.  Instead, he checked other boxes, signaling that his complaint concerned a "job assignment" and "harassment."  He supplemented the packet with a three-page, single-spaced letter in which he again detailed Muftic's treatment of him.  Dkt. # 101-3 at 114–16.  Gomez made no mention of ethnic discrimination in the letter

In his deposition, Gomez acknowledged that his various letters constituted a "complete and accurate" statement of his complaints about Muftic.  Gomez Dep. 34, Dkt. # 101-3 at 11.  He also acknowledged that his letters contained "all of the bases of [his] complaints."  *Id.* at 12.  Gomez stated: "I didn't leave anything out."  *Id.* at 36.

On June 20, FedEx wrote Gomez to acknowledge receipt of the packet.  Dkt. # 101-3 at 151.  FedEx informed Gomez that it would "promptly" conduct a "thorough investigation."  A month later, on July 29, FedEx informed Gomez that its investigation did not reveal discrimination.  FedEx reminded Gomez that no employee was allowed to retaliate against him for filing a complaint.  The following business day, FedEx informed Gomez that it was proceeding with the appeals of Muftic's disciplinary citations.  Dkt. # 101-3 at 153.

On August 5, Gomez and Muftic attended a FedEx hearing concerning the warning letter for time-card falsification.  Dkt. # 101-3 at 154.  Three days later, the regional manager notified Gomez that FedEx upheld the warning letter because it "is imperative that an employee correctly enter their start time regardless of whether they are late or not."  The regional manager advised Gomez of his right to pursue a further appeal within FedEx.

### 3. *Muftic Fires Gomez*

Three days after FedEx upheld the warning letter for falsification, Muftic wrote to Gomez to explain that Muftic had completed his investigation into the May 19 incident concerning Gomez's failure to deliver the package. Dkt. # 101-3 at 155. In a May 11 letter, Muftic concluded that Gomez "falsified [his] delivery record" by misleadingly using the dex-08 code to signify attempted delivery when Gomez, in fact, did not reach the residence's front door. Muftic terminated Gomez's employment, effective immediately, on the ground that Gomez engaged in two instances of falsification within a five-year period.

The next day, August 12, Gomez filed another GFTP complaint to challenge his termination. Dkt. # 101-3 at 157. Gomez provided no information about the basis of his complaint, simply stating that he would explain the situation at his GFTP hearing. *Id.* at 649. FedEx scheduled an August 25 hearing to review Gomez's termination. Dkt. # 101-3 at 162. On August 15, however, counsel for Gomez e-mailed FedEx, claiming that Gomez "was harassed and terminated because he is of Latin descent" and that Gomez alleged "racial harassment before he was terminated." Dkt. # 121-2 at 1. FedEx responded by opening an investigation into the alleged racial discrimination, and Gomez stated in his deposition that he was aware that his counsel initiated an internal EEO complaint with FedEx. Gomez Dep., Dkt. # 101-3 at 80. On August 25, FedEx informed Gomez that it was delaying the GFTP appeal of his termination in order to investigate his discrimination claim. Dkt. # 101-3 at 163. FedEx again requested that Gomez complete a packet to provide additional information about his allegations of discrimination. Gomez stated in his deposition that he discussed the packet with his lawyer and that his lawyer "sent the information" and "the paperwork for the complaint" to FedEx. Gomez

7

Dep., Dkt. # 101-3 at 78–79. FedEx's lawyer investigating Gomez's discrimination claim denied under oath ever receiving the packet from Gomez's lawyer. Connors Decl. ¶ 7, Dkt. # 101-7.

Around this time, Gomez filed a discrimination complaint with the United States Equal Employment Opportunity Commission. Gomez, represented by counsel, alleged that FedEx discriminated against him based on his race, ethnicity, and national origin. Dkt. # 120-2 at 1.

On November 23, FedEx informed Gomez that its own investigation did not reveal discrimination. Dkt. # 101-3 at 164. Two days later, FedEx wrote to Gomez to advise that it had rescheduled the hearing on his two pending GFTP complaints, one about his performance reminder and the other about his termination, for December 2. Dkt. # 101-3 at 165. A FedEx lawyer stated in a sworn declaration that on December 1, the day before the hearing, Gomez's lawyer called FedEx to request that the hearing be rescheduled. Low Decl. ¶ 5, Dkt. # 101-8 at 2–3 . FedEx e-mailed Gomez's lawyer to confirm in writing that Gomez wished to postpone the hearing. Dkt. # 101-8 at 5.

FedEx again rescheduled the hearing for December 13. Dkt. # 101-3 at 167. Gomez attended and submitted a three-page, double-spaced statement in which he again detailed Muftic's "harassment and bullying." Dkt. # 101-3 at 126 –27. Gomez, again, made no mention of racial discrimination or racially-based harassment.

On January 5, 2012, one year after Muftic became Gomez's supervisor, FedEx reinstated Gomez's employment with full back pay. Dkt. # 101-3 at 168. It also voided Muftic's performance reminder, and at Gomez's request, it transferred Gomez to a new facility with different management. Dkt. # 101-3 at 170

**STANDARD OF REVIEW**

The court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact" and if that party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court, when determining whether summary judgment is proper, views the record in the light most favorable to the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254–55 (1986); *accord Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

**DISCUSSION**

Gomez sues FedEx and Muftic under 42 U.S.C. § 2000e-3(a) and § 1981. Section 2000e-3(a) prohibits employers from retaliating against employees for complaining about unlawful employment discrimination. § 2000e-3(a); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2525 (2013). The anti-retaliation provision states, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

§ 2000e-3(a). Section 1981, similarly, states that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens," and the Supreme Court has interpreted this, too, to prohibit retaliation. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445 (2008); *see Nassar*, 133 S. Ct. at 2529–30. Although there are important procedural differences between § 2000-e3(a) and § 1981, courts analyze "functionally identical claims" brought under both statutes in a similar manner. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

**The Termination Claims**

Section 2000e-3(a) does not protect employees for opposing *all* adverse actions by their employers but rather only for opposing *certain* practices that have been "made an unlawful employment practice" by federal law. These practices encompass discrimination on the basis of race, color, religion, sex, and national origin. § 2000e-2. That is, in order for employees to establish a retaliation claim, they must show that they actually communicated to their employer a belief that the employer has engaged in status-based discrimination. *See Crawford v. Metro. Gov't of Nashville & Davison Cnty., Tenn.*, 555 U.S. 271, 276–77 (2009). Employees must actually take a "stand against an employer's discriminatory practices." *Id.* at 277.

The reason for this requirement is that federal courts do not sit as appellate human-resources departments. Federal law protects an employee's right to oppose discrimination only on the basis of certain protected "personal characteristics," *Nassar*, 133 S. Ct. at 2525; it does not protect any right to oppose employer harassment generally. "It is axiomatic that a plaintiff engage in statutorily protected activity before an employer can retaliate against her for engaging in statutory protected activity." *Durkin v. City of Chi.*, 341 F.3d 606, 614–15 (7th Cir. 2003). "An employer cannot retaliate if there is nothing for it to retaliate against." *Id.* at 615. In other words, if "the workplace is unsavory for any reason other than hostility on the basis of race, gender, ethnicity, or religion, no federal claim is implicated." *Vore v. Ind. Bell Tel. Co., Inc.*, 32 F.3d 1161, 1162 (7th Cir. 1994). Especially relevant here is the Seventh Circuit's holding that "personality conflicts . . . are not the business of the federal courts." *Id.*

In this case, Gomez's claims relating to his termination fail because there is no evidence in the record that he ever complained about impermissible discrimination. Gomez states that he "complained of racial-ethnic discrimination," Pl. Br. 1, but he must "support th[is] assertion b[y]

10

citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). The obligation to cite to particular parts of the record is Gomez's, and the court may consider a fact undisputed if a party fails to support it. *Id.* 56(e). Nonetheless, the court has independently reviewed the over six-hundred pages of evidence that Gomez has submitted into the record. There is simply not an iota of evidence that Gomez complained of impermissible discrimination prior to his termination. The evidence, if anything, affirmatively establishes that Gomez felt that Muftic's harassment was *not* racially based. In the June 13 EEO packet, Gomez declined to check boxes indicating that his complaint related to race, color, or origin. Dkt. # 101-3 at 146. Instead, he checked other boxes, suggesting that he saw and contemplated this question. Additionally, in numerous letters and statements to FedEx, Gomez never once mentioned or alluded to racial discrimination prior to his termination. Gomez candidly acknowledged in his deposition that "the statements [he had] written really contain [his] complete complaints." Dkt. # 101-3 at 17.

The law of this circuit is unambiguous that a plaintiff must present evidence of complaining about impermissible discrimination. "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Because Gomez affirmatively disavows having complained of racial discrimination prior to his termination, FedEx is entitled to summary judgment on the termination claims. To the extent that Gomez's fourth amended complaint can be read liberally to encompass claims relating to the initial EEO investigation, those claims fail for the same reason.

**The Post-Termination Claims**

Gomez also alleges that FedEx retaliated against him for filing an EEOC complaint by delaying the investigation into his termination. Filing a complaint "with the EEOC [is] protected conduct" under federal employment-discrimination law. *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 867 (2011). To succeed on his retaliation claims, Gomez must also establish that FedEx "discriminate[d] against" him. § 2000e-3(a). Courts routinely refer to this as the adverse-action requirement. A plaintiff must show that an employer took action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Sante Fe Cy. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted); *accord Thompson*, 562 U.S. at 868.

FedEx terminated Gomez's employment on August 11, 2011, and reinstated his employment with full back pay on January 5, 2012. Gomez argues that FedEx delayed investigating his termination by five months because he complained of racial discrimination. This is an inaccurate description of the record. FedEx initially scheduled Gomez's GFTP hearing for August 25. Dkt. # 101-3 at 162. As a result of Gomez's discrimination claim, FedEx delayed action on the GFTP investigation only until November 25. Dkt. # 101-3 at 165. This is a three-month, not a five-month, period. Additionally, FedEx never received Gomez's EEO packet, which prolonged its investigation.

At issue is whether an employer's several-month delay in investigating an employee grievance, while the employer investigates a discrimination claim, is adverse action that would dissuade a reasonable worker from complaining of discrimination. The Seventh Circuit, in recent weeks, held that the answer is no. *Hill v. Fed. Express Corp.*, No. 14-1513, 2014 WL 5302996, at *1 (7th Cir. Oct. 16, 2014). The court held that *all* employer action taken in

response to the filing of a discrimination charge is not per se adverse. *Id.* That is, "§ 2000e-3(a) does not forbid *all* acts for which charges of discrimination appear in the chain of causation." *Id.* Rather, the statute "forbids further discrimination in response to the assertion of rights." *Id.* Here, as in *Hill*, "FedEx did not do that. It had *already* fired [Gomez]." *Id.* This case differs from *Hill* only in that Gomez is better off than the plaintiff in *Hill* because FedEx ultimately reinstated his employment.

Additionally, the Seventh Circuit affirmatively approved of an employer's reasonable delay in adjudicating a grievance while a company investigates a discrimination claim. The court recognized that "many employees would perceive . . . a benefit" in a company "expedit[ing] consideration of the charge of discrimination, so that any wrong c[an] be rectified as quickly as possible." *Id.* The court also recognized the reality that no "employer has a personnel department with unlimited investigatory capacity." *Id.* Although Gomez may have subjectively and sincerely experienced anguish and uncertainty while FedEx's investigation was pending, it is of no consequence. The brief, several-month delay at issue in this case cannot "reasonably be described as an adverse employment action." *Id.* Therefore, Gomez's remaining claims fail as a matter of law.

The facts presented indicate that Gomez may very well have been harassed, singled out, and treated unfairly by Muftic. But federal courts do not have a "roving commission to review business judgments," *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n.8 (7th Cir. 1987), and they "do not sit as a super-personnel department with authority to review an employer's business decision as to whether someone should be fired or disciplined because of a work-rule violation," *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006). In this case, FedEx

13

reinstated Gomez's full employment with back pay and transferred him to a different facility and management.

**CONCLUSION**

Gomez's claims relating to his termination, or any actions prior to his termination, fail because there is no evidence in the record that Gomez complained of impermissible discrimination prior to his termination. Gomez's claims relating to FedEx's delay in investigating his termination fail because the brief, several-month delay is not an adverse-employment action. The court, therefore, grants FedEx's motion [101] for summary judgment. The court will enter judgment for FedEx in a separate document pursuant to Rule 58(a). Additionally, Gomez's motion [136] for oral argument is moot.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED:  October 29, 2014